AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

| | | |
|---|---|---|
| United States of America<br>v.<br>Walter Liew and Christina Liew<br><br>Defendant(s) | )<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>11 70865 |

**FILED**
JUL 2 7 2011
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

MEJ

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __4/6/2011 to 7/17/2011__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1512 & 18 U.S.C. 1001 | witness tampering and false statement to agents of the United States government |

This criminal complaint is based on these facts:
see Affidavit of Cynthia Ho, attached hereto and incorporated herein

☑ Continued on the attached sheet.

Approved as to form: _____
John H. Hemann, AUSA

_____
Complainant's signature
Special Agent Cynthia Ho, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: 7-27-11

_____
Judge's signature

City and state: San Francisco, California      Hon. Maria-Elena James, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF

## CRIMINAL COMPLAINT AND APPLICATION FOR ARREST WARRANTS

I, Cynthia Ho, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint and warrants for the arrest of WALTER LIEW and CHRISTINA LIEW.

2. I am a Special Agent with the Federal Bureau of Investigation, and have been since September 2001. I am currently assigned to the San Francisco Division, Palo Alto Resident Agency, located in Palo Alto, California. My duties include the investigation of various violations of federal criminal law, including matters related to the theft of trade secrets, including economic espionage.

3. The facts of this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause in support of the criminal complaint and for the requested arrest warrants.

### SUMMARY

4. Based on the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1512(b)(1), 1512(b)(2)(A), and 1512(k), witness tampering, and 18 U.S.C. § 1001(a)(2), making false statements, have been committed by WALTER LIEW and CHRISTINA LIEW.

    a. In order to establish a violation of 18 U.S.C. § 1512(b)(1), the government must show that the defendant (1) knowingly intimidated, threatened, or corruptly

persuaded another person, or attempted to intimidate, threaten, or corruptly persuade another person, or engaged in misleading conduct toward another person, (2) with the intent to influence, delay, or prevent the testimony of any person in an official proceeding.

b.  In order to establish a violation of 18 U.S.C. § 1512(b)(2)(A), the government must show that the defendant (1) knowingly intimidated, threatened, or corruptly persuaded another person, or attempted to intimidate, threaten, or corruptly persuade another person, or engaged in misleading conduct toward another person, (2) with the intent to cause or induce any person to withhold testimony, a record, a document, or other object from an official proceeding.

c.  In order to establish a violation of 18 U.S.C. § 1512(k), the government show that the defendant conspired to commit an offense under 18 U.S.C. § 1512.

   i.  Title 18, section 1512(b)(3), is violated when a person engages in misleading conduct toward another person with the intent to hinder, delay, or prevent the communication to a law enforcement of the United States of information relating to the commission or possible commission of a federal offense.

   ii. Title 18, section 1512(c)(1), is violated when a person corruptly alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding.

d.  An "official proceeding" includes any "proceeding before a judge or court of the

United States" or "a United States magistrate judge." 18 U.S.C. § 1515(a)(1)(A).

e. In order to establish a violation of 18 U.S.C. § 1001(a)(2), the government must show that (1) the defendant knowingly and willfully made a materially false, fictitious, or fraudulent statement or representation and (2) the statement regarded a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States.

5. There is probable cause to believe that WALTER LIEW and CHRISTINA LIEW tampered with a witness in a federal civil trade secret case that had been filed against WALTER LIEW and his company, USA Performance Technology, Inc. ("USAPTI"), by among other things, (a) telling the witness not to say anything because it would not good for the witness or his family, in violation of 18 U.S.C. § 1512(b)(1), and (b) instructing the witness to lie about his knowledge of certain individuals relevant to the trade secret case, in violation of 18 U.S.C. § 1512(b)(2)(A).

6. There is also probable cause to believe that WALTER LIEW and CHRISTINA LIEW engaged and conspired to engage in misleading conduct towards agents of the Federal Bureau of Investigation during the execution of search warrant by intentionally lying to the agents about the whereabouts of a safe deposit box that contained evidence relevant to the FBI's investigation, in violation of 18 U.S.C. §§ 1001 and 1512(k).

## PROBABLE CAUSE

### Background

7. On or about April 6, 2011, E.I. DuPont de Nemours and Company ("DuPont") filed a civil complaint in United States District Court in San Francisco. The complaint named as

defendants USAPTI, WALTER LIEW, and an employee of USAPTI ("EMPLOYEE #1"), and alleged that the defendants misappropriated trade secrets from DuPont.

8. Specifically, the federal civil complaint alleges that the defendants "wrongfully obtained and possess confidential, proprietary, trade secret materials providing detailed specifications for DuPont's chloride-route titanium dioxide ('TiO2') pigment manufacturing process." The complaint alleges that DuPont discovered that EMPLOYEE #1 possessed a number of specific items of information that were derived from proprietary DuPont technologies and that EMPLOYEE #1 obtained this information from WALTER LIEW.

9. Based in part upon the allegations in the federal civil complaint, the FBI opened an investigation into possible thefts of DuPont trade secrets, in violation of 18 U.S.C. § 1832.

10. In addition to being employed by USAPTI, EMPLOYEE #1 was a full-time employee of Chevron Corporation (he has since been terminated). The FBI learned from Chevron that EMPLOYEE #1 possessed information regarding TiO2 on his Chevron computer and that EMPLOYEE #1's duties at Chevron did not involve TiO2. The FBI also learned that two other Chevron employees were found to have been associated with USAPTI and working on projects related to TiO2.

11. In its investigation, the FBI also learned that USAPTI employed at least two former DuPont employees as "consultants" in designing TiO2 manufacturing facilities for customers in China. The FBI learned the names of these two employees and also learned that these employees were known to EMPLOYEE #1 when he worked for USAPTI.

## Witness Tampering with EMPLOYEE #1

12. As part of the FBI's investigation, I and another agent interviewed EMPLOYEE #1 at the U.S. Attorney's Office on June 21, 2011, and July 6, 2011. During the interview, EMPLOYEE #1 provided me with the following information:

13. In 2010 and early 2011, EMPLOYEE #1 was employed by WALTER LIEW and USAPTI to work on the design of TiO2 manufacturing facilities for customers in the People's Republic of China. During the course of that employment, EMPLOYEE #1 learned that WALTER LIEW and USAPTI had obtained information and consulting assistance from two former DuPont employees.

14. In March 2011, EMPLOYEE #1 was working for both Chevron and USAPTI. Chevron discovered that EMPLOYEE #1 had information on his work computer that was DuPont proprietary information regarding the manufacturing process for TiO2. Chevron confronted EMPLOYEE #1, and EMPLOYEE #1 told Chevron that he was working with WALTER LIEW and USAPTI. During the interview with Chevron, EMPLOYEE #1 identified two other Chevron employees who were also working with WALTER LIEW and USAPTI.

15. On April 6, 2011, DuPont filed a federal civil action against WALTER LIEW, JOHN LIEW, and USAPTI in United States District Court in San Francisco.

16. On or about April 6, 2011, EMPLOYEE #1 went to the USAPTI office in Oakland, California. He met CHRISTINA LIEW at the office and, while there, CHRISTINA LIEW received a call from WALTER LIEW, who told her that he was being sued by DuPont for theft of trade secrets. After EMPLOYEE #1 returned home, he found out that

he was also being sued by DuPont.

17. On or about April 8, 2011, CHRISTINA LIEW picked up EMPLOYEE #1 and they visited a lawyer in Fremont, California. CHRISTINA LIEW stated that they were facing the same issues in their lawsuits and would be helpful if they had the same lawyer.

18. After this conversation, EMPLOYEE #1 met with WALTER LIEW to discuss the litigation. WALTER LIEW asked EMPLOYEE #1 about the two other Chevron employees that had been hired by WALTER LIEW at USAPTI, and who EMPLOYEE #1 had discussed with Chevron when he was confronted. WALTER LIEW instructed EMPLOYEE #1 not to say anything else about these employees because it would not be good for EMPLOYEE #1 or his family.

19. Later in April 2011, CHRISTINA LIEW met with EMPLOYEE #1 at a mall. They discussed the pending civil litigation. CHRISTINA LIEW specifically told EMPLOYEE #1 not to mention in connection with the civil litigation the two former DuPont employees of whom EMPLOYEE #1 was aware.

20. WALTER and CHRISTINA also instructed EMPLOYEE #1 not to tell EMPLOYEE #1's lawyer things the lawyer did not need to know. From the context of the conversations, EMPLOYEE #1 understood this to mean that he was not to tell his lawyer in the civil action information regarding the two former DuPont employees.

**False Statements During Search Regarding Safe Deposit Box**

21. On July 19, 2011, agents of the FBI executed search warrants at the residence of WALTER LIEW and CHRISTINA LIEW, 2 Crown Court, Orinda, California, and other locations. The paragraphs in this section of this Affidavit are based on observations made

by me and other FBI agents during the execution and in connection with those searches.

22. WALTER LIEW and CHRISTINA LIEW were present at times during the execution of the search of the residence at 2 Crown Court, Orinda, California. During the search, FBI agents discovered keys to safe deposit boxes. Two agents asked CHRISTINA LIEW, in the presence of WALTER LIEW, whether the keys were for bank safe deposit boxes. The agents observed WALTER LIEW and CHRISTINA LIEW look at each other. WALTER LIEW said to CHRISTINA LIEW in Mandarin Chinese, "You don't know, don't know." A Mandarin Chinese speaking FBI agent was present and understood what WALTER LIEW had said (it appeared to the agent that WALTER LIEW did not suspect that the agent, who is Caucasian, speaks Mandarin Chinese). CHRISTINA LIEW then stated to the agents, in English, that she did not remember.

23. Shortly thereafter, CHRISTINA LIEW entered a vehicle and drove away from 2 Crown Court, Orinda, California. FBI agents followed her for a time and observed her driving in the direction of Oakland, California, before the agents lost contact with her in traffic.

24. Based on bank and financial records associated with WALTER and CHRISTINA LIEW, FBI agents canvassed banks at which the LIEWs might keep a safe deposit box. One of the banks was a branch of the Bank of East Asia USA NA, located at 401 9th Street, Oakland, California.

25. An FBI agent went to the Bank of East Asia with the key and attempted to verify the account. The FBI agent learned from a bank employee that CHRISTINA LIEW had been to the bank branch on the morning of July 19, 2011, at a time when FBI agents were still searching her residence. A bank employee identified CHRISTINA LIEW from her

California DMV photograph shown by the FBI agent. A Bank of East Asia employee also told the FBI personnel that CHRISTINA LIEW called the bank branch, said that she has lost her key to the safe deposit box, and needed to access the box.

26. In response to a grand jury subpoena served on July 19, 2011, the Bank of East Asia provided information to the FBI that CHRISTINA LIEW maintains a safe deposit box at the branch on 9th Street in Oakland and that the box number is 006.

27. Pursuant to a warrant issued by a United States Magistrate Judge, FBI agents and I searched box number 006 at the Bank of East Asia in Oakland, California. The key located in the search of the LIEWs residence in Orinda – the same key that agents asked WALTER and CHRISTINA LIEW about during the search – fit box 006. In the box, I discovered approximately ten external computer storage devices; approximately $11,600 in U.S. currency; approximately $10,000 in Singapore currency; portions of what appear to be contracts between USAPTI and one or more Chinese entities for contracts valued at more than $17 million; and a USAPTI invoice dated January 6, 2011, to the Pangang Group Titanium Industry Co., Ltd. in the amount USD $1,780,000 for engineering design work on a TiO2 chloride process project. This evidence is relevant to both the pending criminal investigation and the pending civil proceeding filed by DuPont.

## CONCLUSION

28. WALTER LIEW tampered with EMPLOYEE #1 in connection with the pending federal civil action by threatening and corruptly persuading and attempting to corruptly persuade him and engaging in misleading conduct toward him with the intent to influence his testimony in the federal civil action, in violation of 18 U.S.C. § 1512(b)(1). Specifically,

WALTER LIEW told EMPLOYEE #1 not to say anything in connection with the pending federal civil action about the two other employees of USAPTI of which EMPLOYEE #1 had knowledge.

29. CHRISTINA LIEW tampered with EMPLOYEE #1 in connection with the pending federal civil action by threatening and corruptly persuading and attempting to corruptly persuade him and engaging in misleading conduct toward him with the intent to cause and induce him to withhold testimony from the federal civil action, in violation of 18 U.S.C. § 1512(b)(2)(A). Specifically, CHRISTINA LIEW told EMPLOYEE #1 not to say anything about his knowledge of two former DuPont employees who were working with WALTER LIEW and USAPTI.

30. WALTER LIEW and CHRISTINA LIEW also conspired (a) to engage in misleading conduct toward another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States information related to the commission or possible commission of a federal offense (18 U.S.C. § 1512(b)(3)), and (b) to corruptly conceal and attempt to conceal a record, document, and object with the intent to impair their availability for use in an official proceeding (18 U.S.C. § 1512(c)(1), all in violation of 18 U.S.C. § 1512(k).

31. WALTER LIEW and CHRISTINA LIEW also made and caused to be made false statements to FBI agents who were engaged in a search authorized by a federal search warrant, in violation of 18 U.S.C. § 1001(a)(2). Specifically, WALTER LIEW instructed CHRISTINA LIEW to falsely tell the FBI that she did not remember the bank that housed a safe deposit box, the key to which had been located by the FBI in a search.

CHRISTINA LIEW then falsely told the FBI that she did not remember the bank. The bank safe deposit box contained documents and evidence that may be used in a federal actions, criminal and civil, regarding theft of trade secrets by WALTER LIEW, CHRISTINA LIEW, and USAPTI.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct.

CYNTHIA HO, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 27 day of July 2011.

HON. MARIA-ELENA JAMES
United States Magistrate Judge